GLENN E. WELLS, APPELLANT, v. NORMAN H. MILLER, TRUSTEE, APPELLEE.

115 N. W. 2d 137

Filed May 18, 1962. No. 35046.

*Spear, Lamme & Simmons*, for appellant.

*Sidner, Lee, Gunderson & Svoboda* and *Fraser, Wenstrand, Stryker, Marshall & Veach*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The plaintiff Wells brought this suit on August 29, 1959, praying for a mandatory injunction to compel the defendant Miller to restore a road ditch along the south side of Miller's farm to its former condition. The trial court found for the defendant and the plaintiff has appealed.

The defendant is the legal owner of the south half of the southwest quarter of Section 19, Township 17, Range 10, and other adjoining land, in Dodge County, Nebraska. A public road lies east and west along the south side of the specifically described land. In 1958 the county

cleaned and deepened the north ditch along this road in accordance with plans provided by the county surveyor. After the deepening of the north road ditch, Miller constructed 6 lateral ditches in the west 40 acres, which drained south into the north road ditch. The record shows that this 40 acres was very flat and contained what is described as alkali holes. Miller caused the land to be leveled, and constructed the lateral ditches heretofore described. The purpose of the lateral ditches was to drain surface waters from the 40 acres into the north road ditch.

The county road terminated near the east boundary of Miller's land. At the terminus of the road was a horseshoe-shaped lake which evidently had been created by a change in the course of the Elkhorn River. A part of the lake lies on Miller's land and a part lies on Wells' land. At the east end of the road was a private lane into the Miller improvements to the north which followed around the lake. Prior to 1944 there was a box culvert in the north road ditch under this private lane, through which water ran from the ditch into the lake. In 1944 or thereabouts, the box culvert was replaced with a 24-inch steel culvert. Subsequently a new 48-inch culvert replaced the 24-inch culvert. Water from the north road ditch ordinarily drained through these culverts into the lake.

At the west end of the half mile road was a road intersection. Coming into the intersection from the northwest was a drainage ditch referred to as drainage ditch No. 6. After entering the intersection this drainage ditch crossed under the east-and-west road and proceeded south in or near the west road ditch of the north-and-south road. Some 20 feet north of this intersection was a culvert under the north-and-south road through which water could pass only in times of high water, but not on the occasions of ordinary rainfall. The evidence shows, however, in the case of unusual rains the culverts in the intersection could not handle the drainage

waters from the northwest, resulting in a flooding of the intersection. When the water reached the height of the culvert under the north-and-south road, it would flow through the culvert onto Miller's land. These waters usually drained into the north road ditch, and were emptied into the lake at the east end of the road. In case of flooding by high water leaving the banks of the Elkhorn River to the north, the whole area was usually inundated, the floodwaters going over the road east and west of the intersection and finding their way south and east across lands to the south. On these occasions of flooding, water from the lake would flow back west through the 48-inch culvert into the north road ditch.

The evidence shows the elevation at the west intersection to be approximately 18 inches higher than the elevation at the east end of the half-mile road, using the level of the lake as a common bench mark. The county in deepening and cleaning the north road ditch made use of the 18-inch fall in order to provide drainage to the east. High water, whether the result of flooding from the Elkhorn River or from heavy rain, appears to carry silt into the north road ditch approximately midway of its length, which causes water to stand in the west half of the ditch. This necessitates continuous cleaning after all heavy rains and floods in order to obtain proper drainage to the east. The defendant asserts that he was cleaning the north road ditch for this purpose only when he was enjoined by the plaintiff.

In the latter respect the evidence shows that the area was inundated by two floods in 1960. One occurred in April and the other in June. There appears to be little dispute that the primary source of these floods was the overflowing of the Elkhorn River to the north of the Miller lands, although rainfall was a contributing factor. These floods were of such volume that they passed south over the east-and-west road, both on the east and west of the road intersection at the southwest corner

of Miller's land.   This resulted in a silting of the north road ditch and a holding of the water in the west half of the north road ditch and on the Miller land.   Miller obtained informal permission from the county and township boards to clean the ditch, provided he left the excavated dirt on the east-and-west road.   He cleaned the ditch and piled the dirt on the north half of the road.   Continuing rains made the road practically impassable.   Wells obtained permission to push the dirt onto the north shoulder of the road, which he did.   In so doing, some of the dirt was pushed into the road ditch preventing complete drainage to the east.   After the April flood Miller again proceeded to clean the ditch.

The plaintiff Wells is the owner of the northeast quarter of Section 30, Township 17, Range 10, and other adjoining land, in Dodge County, Nebraska.   The northeast quarter of Section 30 corners with the Miller land, the Wells quarter section lying to the southeast of the Miller land.   The greater portion of the horseshoe lake, including both ends of the lake, lies on plaintiff's land. The outlet from the lake is also on Wells' land.   It is the contention of plaintiff that Miller deepened the north road ditch along the south of his land, causing additional waters to flow east and empty into the horseshoe lake.   This, the plaintiff asserts, has caused the water in the horseshoe lake to rise and encroach upon his feed lots near one end of the lake, to his damage.   It is the position of plaintiff that the waters on the Miller land, prior to the deepening of the road ditch, normally flowed to the southwest in the state of nature and that the deepening of the north road ditch has caused them to flow east, contrary to their natural drainage course. The primary issue is whether or not Miller, in cleaning the north road ditch, changed the natural course of drainage and diverted waters upon the land of the plaintiff contrary to controlling rules of law on the subject.

It is well-established law in this state that water flowing in a natural drainageway may not lawfully be

diverted and cast upon the land of an adjoining land-owner to his damage where it was not wont to run in a state of nature. Nor may surface waters be collected and discharged through an artificial channel in unusual quantities upon land of another, except into a natural drain. Andersen v. Town of Maple, 151 Neb. 103, 36 N. W. 2d 620. There is a clear distinction in the law governing surface waters and floodwaters flowing as a part of a natural stream during flood season. No one' is permitted to interfere with the natural flood plane of a stream to the injury of other riparian owners. Cooper v. Sanitary Dist. No. 1, 146 Neb. 412, 19 N. W. 2d 619; Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732. The rule in this state with reference to the use of road ditches by adjacent landowners is that such a land-owner has a right to make use of it for the drainage of his land, as is incidental to its existence and which use does not inconvenience or damage the public or other persons, or damage the public work. Thom v. County of Dodge, 64 Neb. 845, 90 N. W. 763.

The record shows that prior to 1958, when the county deepened the north road ditch, it was rather shallow. The evidence is that it could be crossed in many places with farm machinery. The county, however, dug the ditch out according to a fixed grade. The bottom was sloped from the west to east so that all surface water in the ditch would flow east into the horseshoe lake. There is no satisfactory evidence in the record that defendant did anything more than clean out the ditch in order that the water would flow east in accordance with the grade of the ditch established by the county. See Gray v. Chicago, St. P., M. & O. Ry. Co., 90 Neb. 795, 134 N. W. 961.

There is some evidence in the record that in former times the surface water from the west 40 acres of the Miller land flowed through a culvert under the east-and-west road into a cutoff lake to the south of it. At some time in the past, not shown in the record, this

culvert was removed and surface waters have not flowed south since its removal. In any event, it is not here contended that Miller or his predecessors in title removed this culvert or in any manner interfered with any natural course of drainage that may have formerly existed at that point.

The county surveyor testified, as shown by platted elevations prepared by him, that the grade of the bottom of the north road ditch was lower when the county completed its work in 1958 than it was in August 1959. The grade established by the county with its 18-inch fall from west to east appears to have brought about any change that took place in the course of drainage. The defendant insists that all he did at any time was to clean the ditch to the grade established by the county in order that water in the west end of the ditch would move east in accordance with the drainage plans and elevations prescribed by the county. The trial court apparently took this view of the evidence and concluded that defendant had no part in the diversion of any water from its natural drainage course. Such a finding is sustained by the record.

The issue in this case is between Miller and Wells only. The county and township are not parties. We conclude under the record before us, as did the trial court, that defendant was making proper use of the north road ditch as it was constructed by the county in 1958. The change in the course of the water in the north road ditch, if any, is not shown to have been made by the defendant. While it is true that defendant cleaned the ditch to the grade established by the county for his own benefit, he was within his rights in making such incidental use of the county-constructed ditch.

The Miller land was in the flood plane of the Elkhorn River. The inundation of the area by floodwaters from the Elkhorn River does not appear to be pertinent to the issue before us. The inundation of the area would have occurred irrespective of any construction in the

north road ditch. When the floodwaters receded into the banks of the stream, the standing waters which remained would ordinarily be considered the same as surface water. Such water could then be drained into the north road ditch under the same conditions as other surface water.

Although not made a primary issue in this case, it appears that water from the horseshoe lake spills into a similar cutoff lake when it reaches a certain height, and flows from the latter lake into the Elkhorn River. It would appear that the lakes and natural spillways constitute a natural drainageway in which surface water could be drained by adjoining landowners without liability under the rules announced in Nichol v. Yocum, *ante* p. 298, 113 N. W. 2d 195.

The Miller land slopes from north to south and from west to east. This is in the general direction of the Elkhorn River and the general course of drainage. The trial court heard the witnesses on the stand and made a personal inspection of the area involved. We think the findings of the district court that defendant did not unlawfully collect and discharge surface waters or divert water from a natural drainage course upon the lands of plaintiff through an artifical drainage course constructed by him is sustained by the evidence. We necessarily conclude that the judgment of the district court should be affirmed.

AFFIRMED.