Chris A. Nielsen et al., Appellees, v. Mayme
Chappelear, Appellant.

121 N. W. 2d 809

Filed May 31, 1963. No. 35404.

Sidner, Lee, Gunderson & Svoboda, for appellant.

O'Hanlon & O'Hanlon, for appellees.

Heard before White, C. J., Carter, Messmore, Yeager, Spencer, Boslaugh, and Brower, JJ.

Yeager, J.

This is an action which was instituted by Chris A. Nielsen and Alice I. Nielsen as joint owners in fee simple of certain lands in Washington County, Nebraska, the

purpose of which was to obtain a mandatory injunction against Mayme Chappelear, defendant and the fee simple owner of certain lands in Dodge County, Nebraska, lying immediately to the south of the lands which at the time of the commencement of the action belonged to the Nielsens. Since the commencement of the action Chris A. Nielsen died, and since his death it has been presented by Alice I. Nielsen, sole plaintiff. A county road extending east and west which is the dividing line between Washington and Dodge Counties is also the dividing line between the lands of the parties. The land of the plaintiff is on the north side and that of the defendant is on the south side. The parties have other lands in the immediate vicinity but they require no specific mention herein. The purpose of the action was to obtain an injunction which would prevent the construction and maintenance by the defendant of an obstruction or dike on her land on the south side of the county roadway, the effect of which dike would be to prevent the passage of water from the plaintiff's land into an alleged drainway in a general southerly or southeasterly direction across the land of the defendant.

The defendant filed an answer in which the plaintiff's right to relief was denied. A cross-petition was also filed but its content and purpose will not be stated or considered at this point in the opinion.

The case was tried to the court and a judgment granting the relief sought by the plaintiff was rendered. The defendant filed a motion for new trial which was overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed.

The record discloses that the defendant has 80 acres south of the county road which has been mentioned and immediately to the north the plaintiff has 80 acres, of which about 54 acres are of particular concern herein. Plaintiff's land is flat and in case of rain the course of flow of water is southward to the road. In about the year 1956 this land was leveled for irrigation purposes.

More accurately, the surface was evened but the general level or contour was not changed and the general course of flow of water was not changed, but continued southward to this road. Without this road this general course of flow, it appears, would have been, in the state of nature, across the line and onto the land of the defendant to the south, which land to the south was also practically level with the course of flow southward across it.

This east-west road was constructed at least as early as 1918 and its condition at the time of trial was substantially the same as it had been since 1918. It extended eastward between the lands of the parties about a quarter of a mile to a north and south road. It also extended westward between these lands and beyond an undetermined distance. In the construction the road was elevated above the natural level of the lands on the north and the south sides thereof, and it has so remained through the succeeding years. Its exact height is not disclosed but it becomes apparent that it is sufficiently high to prevent the flow of water across it as it would have flowed in the course of nature.

In the construction of the road a ditch was constructed parallel with the road on the north side and another on the south side. The water flowing southward from plaintiff's land flowed into the ditch on the north side and as to the disposition of it thereafter there is considerable dispute, but as it will appear later herein that matter, while of some significance, is not controlling.

There is no evidence of passage of the surface waters in their diffused state from plaintiff's land to the land of the defendant. It appears that at some time in the past a 12-inch culvert was constructed across the road to carry water from the north side ditch to the south side and from the south to the north.

The apparent theory of the plaintiff was that the design of the culvert was to allow passage of surface waters from her land into the ditch on the north side of the road until the ditch filled up to and above the base of the

culvert when it would cross over to the south side and drain into the ditch on the south side, and on down over the land of the defendant. Her theory embodied a contention that there was a natural drainway for waters passing from her land down across the land of the defendant.

As to the passage of water the defendant contended that in the state of nature there never was a drainway for water coming onto or crossing her land. In point of fact she contended that while some water came across from north to south, except in time of flood, water from the north did not ordinarily drain onto her land but built up in the north and south ditches. After it reached a sufficient elevation the water in the north ditch flows out west through a tile and in the south ditch it just stands.

After the plaintiff did her leveling the surface waters from her land flowed into the ditch and by the action here she contends that she has the right to have the water pass across the road at the culvert and eastward a distance of about 20 or 30 feet and thence southward through what she asserts is a natural drainway over the defendant's land. In other words she insists that she has the right to have the water flowing from her land collected in the ditch on the north side of the road and to have it concentrated at the culvert and caused to flow to the south ditch and thence into what she asserts is a natural dainway.

The defendant refused to allow this and constructed barriers or dikes to prevent it. The question of the right of the defendant to prevent the flow of water across her land is the one involved here. The record without question discloses that the defendant did construct such barriers and has insisted upon and persists in their maintenance.

The record fails to sustain the contention of the plaintiff that there ever was a natural drainway into which surface waters from plaintiff's land naturally collected

and were carried onto and over the defendant's land. Early in the case there was such evidence, but the witness who gave this testimony later retracted it on the basis of more thorough investigation, and testified that there was nothing to indicate a natural drainway on the defendant's land. There is evidence that there was a slightly depressed drainway on the defendant's land, but that it had been artificially created thereon for the purpose of drainage on that land, and not for any other purpose. There is nothing of substantial character to dispute this contention of the defendant.

The claim of the plaintiff is that the waters involved in this case are surface waters, and the plaintiff must prevail, if indeed she may prevail, on that theory. Surface waters are defined as waters which appear upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily result from rainfall or melting snow. See, Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732; Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195; Wells v. Miller, 173 Neb. 780, 115 N. W. 2d 137.

The rights and liabilities affected by surface waters, and the earlier decisions of this court in relation thereto, have been considered in Nichol v. Yocum, *supra*. The conclusions therein set out are determinative of the rights and liabilities of the parties herein to the extent that a determination is required. The following statements of principle appear in this case:

"Diffused surface waters, which ordinarily result from rainfall and melting snow and having no permanent source of supply or regular course, may be dammed, diverted, or otherwise repelled by an adjoining landowner without liability, if it is necessary and done without negligence. * * *

"When surface waters concentrate and gather in volume, so as to lose their character as diffused surface waters and flow into a natural depression, draw, swale, or other natural drainway, the flow may not be arrested

or interfered with to the injury of neighboring proprietors.

"The owner of land is the owner of surface waters which fall, arise, or flow upon it, and he may retain them for his own use without liability. He may also change their course on his own land by ditch or embankment, but he may not divert them upon the land of others except in depressions, draws, swales, or other drainways through which such waters were wont to flow in a state of nature.

"While the flow of surface waters in a natural depression, draw, swale, or other natural drainway may be temporary and occasional, the course which they uniformly take is the controlling factor."

No benefit could flow to the plaintiff insofar as the issues involved here are concerned from the first principle since nothing done by the defendant diverted or repelled the flow of surface waters flowing in the state of nature from plaintiff's land. It was diverted by the elevated highway and collected in volume in the ditches.

No benefit could flow to her from the second principle since, if it be assumed that these were concentrated waters which gathered in volume, the outlet sought by the plaintiff was not into a natural depression, draw, swale, or other natural drainway, but into an artificial drainway created by the defendant on her own land. For this same reason no benefit could flow from the third stated principle.

The fourth statement is merely a declaratory statement the effect of which is to say that if there is a right to have water flow into a natural depression, draw, swale, or other drainway, if one exists, flow does not have to be constant, but may be temporary or occasional as in the state of nature is required.

These statements of principle, in the light of the evidence adduced, are inhibitive of the rights asserted by the plaintiff, as has already been pointed out herein.

The conclusion reached as to plaintiff's cause of action

is that the judgment of the district court in favor of the plaintiff on her pleaded cause of action is erroneous.

In this case the defendant filed an answer and also a cross-petition. By the cross-petition it was alleged that plaintiff had filled the ditch on the north side of the road to the injury and damage of the defendant. No specific or general mention of this matter is made in the formal entry of judgment in the case. In the motion for new trial the defendant asserts that the court erred in failing to grant this relief. The matter was referred to in the brief but it will be said without elaboration that on the record made nothing appears which would justify the relief prayed in this respect by the defendant.

For the reasons stated herein the judgment of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.