FRANK L. KUTA ET AL., APPELLANTS, V. DECLAN E. FLYNN ET AL., APPELLEES.

155 N. W. 2d 795

Filed January 19, 1968. No. 36646.

Robert F. Martin, for appellants.

Vogeltanz & Kubitschek, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action in equity by the plaintiffs, Frank L. Kuta and Josie Kuta, to require the defendants, Declan E. Flynn and Minnie Flynn, to remove an obstruction across an alleged natural watercourse flowing southward from the plaintiffs' land and across the defendants' land, and seeking damages for the loss of crops. Plaintiffs allege that the defendants' construction in 1963 of a raised alley or lane and irrigation lateral base running east and west some 20 feet south of the south property line of the plaintiffs blocks water flowing from plaintiffs' land in a natural watercourse causing water to back up and pool on some 3 acres of plaintiffs' land.

In addition, plaintiffs allege that water falling on the defendants' property drains northward from this raised irrigation lateral and contributes to the pooling of water on these 3 acres of the plaintiffs' land. Plaintiffs contend that prior to the construction of this raised irrigation lateral and raising of the alley or lane, water from plaintiffs' land naturally flowed in natural watercourses at two points where it entered defendants' property.

Defendants deny the above allegations and allege that the plaintiffs changed the natural slope of their land and thereby changed the natural watercourse and drainway on said property, and had dammed water on the plaintiffs' land and had caused its wrongful overflow onto the lands of the defendants. Defendants seek injunctive relief and damages.

The trial court denied relief to both the plaintiffs and the defendants and taxed costs to the individual parties. Plaintiffs appeal. We affirm the judgment.

The first question involved is whether the defendants are blocking or obstructing a natural drainway or watercourse from the plaintiffs' property across their land lying to the south. The law in Nebraska with reference to diffused surface waters and natural drainageways is well settled. Surface waters are waters which appear upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily result from rainfall or melting snow. Rolfsmeyer v. Seward County, *ante* p. 348, 154 N. W. 2d 752; Nichol v. Yocum. 173 Neb. 298, 113 N. W. 2d 195. The owner of land may collect diffused surface waters, change their course, or pond them upon his land, or cast them into a natural drain without liability. He may not, however, collect such waters and divert them onto lands of another except in depressions, draws, swales, or other drainageways through which such waters were wont to flow by nature. Rolfsmeyer v. Seward County, *supra;* Linch v. Nichelson, 178 Neb. 682, 134 N. W. 2d 793. And when diffused surface waters gather in volume in veloc-

ity or flow into a natural depression, draw, gulch, or drainway, such waters are not subject to the rule that they may be dammed, repelled, or diverted without liability as in the case of diffused surface waters. Rolfsmeyer v. Seward County, *supra;* Nichol v. Yocum, *supra.*

Both properties herein are irrigated. The pooling area of 3 acres for which the plaintiffs claim damages, is not disputed. It lies on plaintiffs' property immediately to the north of the property line separating the properties. The defendants' lateral irrigation lane or base lies about 20 feet south of the property line between the parties.

Plaintiffs' theory of this case is predicated upon the contention that there is a natural drainway from their property onto the defendants' land at two points. It would serve no purpose to review the detailed evidence in this respect. The evidence shows that during the years up to 1953 the plaintiffs' land had been leveled and several knolls had been removed as late as 1953. While this leveling apparently occurred more than 150 feet north of the property line, the clear inference is that the natural watercourse or drainway off plaintiffs' property had been changed. The evidence is persuasive that the purpose and effect of the leveling interfered with the natural flow of surface water on the plaintiffs' property, increased the total volume which flowed onto the property of the defendants, and discharged it at the two points which the plaintiffs claim were the natural drainways. We note that the court, in this case, inspected the premises. Also persuasive in this respect are aerial photographs, exhibits 1 and 3, and a picture of the property, exhibit 17. These exhibits and the other evidence make it clear that historically the water from the plaintiffs' land did not drain in the courses into which the plaintiffs have now brought the water from their land as it drains onto the defendants' property. It appears from this evidence and these exhibits that water drained naturally from the plaintiffs' prop-

erty onto the defendants in at least three different places and there is no way of reasonably estimating any particular amount of water that might have drained off the plaintiffs' land in its natural state that backed up on the plaintiffs' land and was a part of the 3-acre water pool. As noted before, a landowner cannot collect surface waters and divert them onto lands of another except in depressions, draws, swales, or other drainageways through which such waters flow by nature. Linch v. Nichelson, *supra*. From our review of the evidence we find that the plaintiffs have failed to establish the existence of a natural watercourse or drainway at two points and running from their land onto the defendants' land. Testimony as to the general surface water drainage in an area does not substantiate allegations that a natural watercourse existed at specific places in a state of nature. We come to the conclusion that plaintiffs have failed to establish in the evidence the basic theory of their case.

Plaintiffs, however, claim that surface water falling on the defendants' land to the north of the irrigation lateral has been obstructed and diverted from its natural course to the south because of the raising of the irrigation lateral when defendants repaired it in 1963. It is claimed that this obstruction causes or contributes to the pooling of the water on plaintiffs' land. Diffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, in the absence of negligence. Nichol v. Yochum, *supra* (1962); Neilsen v. Chappelear, 175 Neb. 381, 121 N. W. 2d 809 (1963). The evidence shows that the plaintiff Frank Kuta cut across the defendants' land and lateral in November 1962 without permission and that the purpose was to drain rain water pooled on this 3-acre tract. The evidence shows that the defendant Declan Flynn repaired their land and lateral in 1963 to remedy the damage caused by the plaintiffs cutting through the lane and lateral. Plaintiffs contend that in performing their repair work the defendants raised the irrigation lateral and lane about a foot so that it now

causes the water to back up and cause the pooling of water on the 3 acres. This was denied by the defendants. The evidence shows that a qualified engineer took survey readings at 50-foot intervals along the property line between the Kuta land and the Flynn land and laterally at right angles at each interval. An examination discloses that the area identified by the plaintiffs as the area from which the flooding occurred encompasses about 15 intervals where readings were taken. At each of these intervals the level of the defendants' lateral irrigation base or lane was lower than the corresponding level at the property line. Plaintiffs' own testimony was that the land at the property line fence had never been disturbed. And it is undisputed that the natural slope or drainway was south from the plaintiffs' property over the defendants. Particularly significant also is the fact that the plaintiffs first experienced pooling on their land in 1962, prior to the repair work by the defendants in 1963 as a result of the plaintiffs' cutting across the prior lateral and lane of the defendants. Both of plaintiffs' causes of action are based upon the alleged liability of the defendants in the repair of their lateral irrigation base in 1963. They have not established that the defendants in performing this act either blocked or obstructed the natural drainways or watercourses or that they had unreasonably diverted or repelled surface water falling on their own property thus causing the pooling of the water on the plaintiffs' property.

Plaintiffs also allege that they have acquired an easement by prescriptive rights to drain water across the defendants' land. In this state, an easement by prescriptive rights can be acquired only by adverse use for 10 years. In Mader v. Mettenbrink, 159 Neb. 118, 65 N. W. 2d 334, this court stated: " '* * * prescriptive right will not commence to run until some act or fact exists giving the party against whom the right is claimed a cause of action.' " The evidence shows that the first pooling of water on the plaintiffs' property occurred in

1962 and the first cause of action the defendants could have had against the plaintiffs as indicated by the evidence herein would have been in 1962 when the plaintiffs cut into the defendants' lateral base in order to drain the pool of water on their property. Consequently, plaintiffs have failed to establish any easement by prescriptive rights.

The judgment of the district court is correct and is affirmed.

AFFIRMED.