REQUESTED BY: Robert H. Sindt, Buffalo County Attorney, P.O. Box 67, Kearney, Nebraska, 68847.
When a county road intersects a natural watercourse, and after damming of the watercourse by abutting landowners, the culvert or tube is removed from the county road, does the county have a duty to replace the culvert when the upper landowner removes the dam?
Yes.
The general rule is stated in Wilson Concrete Co. v.County of Sarpy, 189 Neb. 312, 202 N.W.2d 597, which held:
 "It is the duty of those who build structures in a natural watercourse to provide for the passage through such obstruction of all waters which may reasonably be anticipated to flow or be carried therein and this is a continuing duty. What private proprietors may not do neither may the public authorities except in the exercise of eminent domain."
The fact of the upper landowner damming the watercourse and then subsequently removing the dam is, we think, covered by In Re Drainage Dist. No. 5 of Dawson County, 179 Neb. 80,136 N.W.2d 364, which holds:
 "The diversion of seepage and flood waters by an irrigation canal built across a natural drain carries with it no right on the part of lower landowners to insist on the continuance of such artificial condition in the absence of evidence affording a basis for an equitable estoppel.
 "An upper riparian owner constructing and maintaining an artificial structure diverting the flow of seepage and flood water for a purpose advantageous to it is not obligated by mere lapse of time to maintain the structure and the conditions produced thereby, although it incidentally benefits lower landowners."
With regard to the question of estoppel, the court, on page 89, states:
 "Plaintiff to acquire any rights would have to show that it improved its property with reference to the diversion and in reliance on a continuance thereof. . . ."
This gives rise to a factual question whether the lower-lying landowner has leveled his land or otherwise acted in reliance upon the continued existence of the upper landowner's dam, and gives rise to further questions, whether such improvement was in reliance thereon, and, whether he had a right or reason to rely thereon. A case subsequent to the Drainage District No. 5 case, indicating that the burden of proof for an estoppel is going to be very difficult is Kiwanis Club Foundation Inc. v. Yost,179 Neb. 598, 139 N.W.2d 359, which held:
 "Where a dam has been built for the private convenience and advantage of the owner, he is not required to maintain and operate it for the benefit of an upper riparian proprietor who obtained advantages from its existence; and the construction and maintenance of such a dam does not create any reciprocal rights in upstream riparian proprietors based on prescription, dedication, or estoppel."
In this case, it was the upper riparian owner who was interested in the lake which resulted from the maintenance of the dam.
The court went on to state that a dam was not `permanent', the court said:
 "Aside from cases resting on contract, mutual consent, or grant, the theories upon which courts have sustained the right of upper riparian owners to continuation of conditions established by dams below them on the stream have varied widely. Some courts take the position that the original artificial condition has become the natural permanent condition. . . . Others proceed on the theory that the upper owner acquires a reciprocal prescriptive right. . . . Still others proceed upon the theory of estoppel. . . .
 "Cases representing the view denying the claims of upstream owners are likewise diverse. The largest group holds that `property rules' are predominant and that the upper owners cannot obtain any prescriptive rights because adverse user is an essential element in the acquisition of prescriptive rights, and is not present in such cases. Others base the decision on the ground that the owner of the dam was not estopped from changing or destroying the improvement. . . . * * *
 "A departure from the `rules of property' in cases such as this of necessity compels a judicial attempt to weigh and balance conflicting, interlocking, and equally appealing equities. * * * Under such circumstances, the rules affecting the title to real estate should prevail.
 "We hold that where a dam has been built for the private convenience and advantage of the owner, he is not required to maintain and operate it for the benefit of an upper riparian proprietor who obtains advantages from its existence; and that the construction and maintenance of such a dam does not create any reciprocal rights in upstream riparian proprietors based on prescription, dedication, or estoppel.
 "The owner of a dam and the prescriptive right to overflow the land of upper riparian owners may abandon has rights, and may also return the river to its natural state by removing or destroying the dam."
A recent case which, although not exactly on point, appears to indicate that lower-lying landowners have no better rights than those above an obstruction, is Nickman v.Kurshner, 202 Neb. 78, 273 N.W.2d 675, which allowed an upper landowner to replace and improve the efficiency of an artificial drainway which led to a natural drainway. The court said that the increased velocity and flow of water due to the increased efficiency of the new structure was a matter which the subservient estate must bear, and indicated that only in the case of negligence in the construction of the artificial drainway would a right to damages arise in the lower-lying landowner.
In conclusion, we can see no basis whatever for the county impounding the water in a natural drainage way, if the lower-lying landowner has not changed his position during the existence of the impoundment. Even if he has, in light of the general rule first stated above, we doubt that the county can continue to impound the water. It would appear that the lower-lying landowner has a duty to receive the water, and that if the county uses due care and avoids negligence in the releasing of the water and the installation of a culvert, it is unlikely that a basis for recovery of damages by the lower-lying landowner will become apparent.
The foregoing is conditioned upon our understanding that the upper landowner, by his construction and subsequent removal of the dam, has not substantially altered the natural drainage way or the amount of drainage he would cast upon subservient estates. If this is not established, then we believe Kuta v. Flynn, 182 Neb. 479, 155 N.W.2d 795, is authority for a conclusion that the upper landowner has no right to have the water released. It is essential that there be and have been a natural drainway running from the property of the upper-lying landowner to the lower-lying landowner. Thus, it also follows that the natural drainway entering the lower-lying land must be the same drainway through which the natural drainage formerly found its way.Nielsen v. Chappelear, 175 Neb. 381, 121 N.W.2d 809.