MARCELLA PAASCH, APPELLANT, v. JULIE BROWN, APPELLEE.
208 N. W. 2d 695

Filed June 29, 1973.   No. 38830.

Homer E. Hurt, Jr., and James A. Gallant, for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke & Wiseman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Plaintiff, an upper landowner, claimed that defendant, a lower landowner, had obstructed the flow of surface waters in a natural drainway that was not a stream, river, brook, or watercourse.   Injunctive relief and damages were sought.   After a trial, and on a general finding, the District Court dismissed the claims, and plaintiff appeals.

In August 1970, plaintiff purchased a tract of 40 acres of land located in Section 23, Township 20 North, Range 6 East, Dodge County. The tract, a "long 40," was ½ mile in length east-west. Its south boundary represented an extension of the south boundary line of a somewhat triangular tract of 26 acres owned by defendant. The east boundary of the "long 40" abutted part of the west boundary of defendant's tract. The defendant's tract for practical purposes formed a right triangle, the hypotenuse of which abutted a drainage ditch alongside U.S. Highway No. 275. A mulberry tree stood midway between the north and south boundaries of the "long 40" and on the division line between plaintiff's and defendant's tracts.

The "long 40" was generally flat and declined gently eastward. No steady stream of water flowed on it, but water flows did occur in periods of heavy rain or melting snow. Surface water from the west entered the "long 40" near the southwest corner. The water spread over the "long 40" in a diffused state until it reached the center, a depressed area, from which it meandered in natural depressions. Although these natural depressions could not be classified as streams, rivers, brooks, or watercourses, they were deep enough that no one farmed across them. The waters were discharged near the mulberry tree and across defendant's tract in a diffused state eastward to the highway ditch.

In 1949 a ditch was constructed along the south side of defendant's tract. During heavy rains it carried part of the water from the "long 40" to the highway ditch. Since 1949 overflow of the highway ditch has at times delayed drainage of the "long 40."

In May 1961, defendant's tract was leveled for irrigation under supervision of the Soil Conservation Service. Preleveling elevations indicated gradual declines eastward and also northward and southward to a line between the mulberry tree and the highway ditch. The record is devoid of expert testimony respecting the rela-

tionship between the elevations and drainage. There is testimony that prior to the project surface water was diffused and did not flow in a natural depression or draw.

In the leveling of defendant's tract a ditch, 18 inches deep, 15 feet wide, and 1,200 feet long, was built between a point near the mulberry tree and the highway ditch. Its downward grade toward the highway ditch was 2.01 percent. In connection with the project defendant caused the installation of a metal tube 15 inches in diameter and 23 feet long at the west end of the ditch to receive water from the "long 40." After August 1970, defend-ant built a ditch that ran southward from the mulberry tree to the ditch alongside the south line of defendant's tract.

In 1970 plaintiff straightened the meandering drain-age by constructing a ditch that ran due east from the depressed area in the center to the west end of defend-ant's ditch near the mulberry tree. The depth of the ditch was 18 inches. The "long 40" was subsequently covered with water in the springs of 1971 and 1972 and water backed into the area north of the mulberry tree. Crops were damaged. The depth of the water rose after the leveling of defendant's tract.

The "long 40" was placed in the soil bank on many occasions prior to 1970 because of its wetness. Until commencement of the present suit on April 29, 1971, al-most 10 years after the leveling of defendant's tract, defendant received no complaint respecting flooding of the "long 40."

Our law relating to diffused surface water has no clear, accurate label. See, 5 Clark, Waters and Water Rights, § 456.2, p. 561 (1972); Comments, 41 Neb. L. Rev. 765 (1962). The reason is apparent in light of cer-tain statutory and common law rules.

"Owners of land may drain the same in the general course of natural drainage by constructing an open ditch . . ., discharging the water therefrom into any natural

watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation." § 31-201, R. R. S. 1943.

"Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse." § 31-202, R. R. S. 1943.

"(D) iffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, and in the absence of negligence. But when diffused surface waters are concentrated in volume and velocity into a natural depression, draw, swale, or other drainway, the rule as to diffused surface waters does not apply. . . . '(A) natural drainway must be kept open to carry the water into the streams, and as against the rights of the upper proprietor, the lower proprietor cannot obstruct surface water when it has found its way to and is running in a natural drainage channel or depression. . . .' " Nichol v. Yocum, 173 Neb. 298, 113 N. W. 2d 195 (1962).

" '. . . But, so far as one parcel has been subjected by nature to a servitude in favor of an adjoining parcel, the enjoyment of which will be materially injured by destroying the servitude, it would seem that the rule by which a purchaser of property is bound by its condition when he acquires title would prevent the destruction of such servitude. In order to be within the operation of this rule, the servitude must be clearly and permanently impressed upon the property so as to be plainly visible to the intending purchaser. Under this rule, the great weight of authority is in favor of the proposition that a lower proprietor cannot place any obstruction in an obvious drainage channel which has been formed by nature and carries the water from a higher to a lower estate.' " Id.

We find defendant obstructed surface water that ran

in the equivalent of a natural drainage channel from plaintiff's "long 40." Plaintiff is accordingly entitled to an order of injunction.

The general finding by the District Court on the injunction question implies that the court did not reach issues pertaining to existence or amount of 1971-72 crop damage for which defendant may be liable. The trial judge viewed the premises. The only testimony to the amount of damage was given by plaintiff's husband. It is not clear enough for us to determine liability without the opportunity to observe his demeanor. Respecting those issues the District Court on remand may make appropriate findings and judgment or in its discretion grant a new trial.

Judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.