EUNICE HARRINGTON INVESTMENTS, LTD., APPELLANT,
v. CHARLES G. WALLACE, JR., APPELLEE.

299 N.W.2d 174

Filed December 1, 1980.   No. 43031.

Larry R. Baumann for appellant.

John R. Brogan of Brogan, McCluskey & Wolsten-holm for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The plaintiff, a limited partnership, is the owner of a 40-acre tract of land described as the northwest quarter of the northwest quarter of Section 19, Township 12 North, Range 3 West of the 6th P.M. in York County, Nebraska. The defendant owns a 120-acre tract immediately to the south, described as the southwest quarter of the northwest quarter and the west half of the southwest quarter of the same section.

Although there is some conflict in the evidence, the record shows that prior to 1973, surface water on

the plaintiff's land tended to collect in a natural depression running generally north and south near the center of the tract and then drain to the south toward the defendant's land, where it would collect in a basin or depression located across the boundary between the plaintiff's and the defendant's land.

For many years there had been a ridge or raised area running east and west along the north boundary of the defendant's land. Following heavy rains the water would extend across both tracts. As the water evaporated and receded, the ridge along the boundary would divide the water so that separate basins would exist on each side of the boundary. In 1973, the plaintiff did some leveling on his property. The result was to increase the runoff of surface water toward the defendant's land. The plaintiff commenced irrigation in 1974 and, to some extent, waste irrigation water flowed from the plaintiff's land onto the defendant's land.

In the fall of 1974, the defendant raised the level of the raised area 12 to 14 inches by grading and filling the roadway which ran along the raised area. In the spring of 1975, water backed onto the plaintiff's land because of the raised roadway on the defendant's land. On March 5, 1975, the plaintiff commenced this action to enjoin the defendant from maintaining the dike and to recover damages for the flooding of his cropland. The plaintiff alleged the roadway constituted a dike across a natural waterway.

The defendant's answer alleged the embankment had been constructed to protect his land from increased runoff and waste irrigation water from the plaintiff's land. The defendant sought injunctive relief to prevent the plaintiff from destroying the embankment and damages for the destruction of crops caused by the water discharged onto his land.

The trial court found that the plaintiff's petition should be dismissed and that the defendant was entitled to maintain the existing embankment along the north

boundary of his land subject to installing a culvert with a flow line no higher than an assumed elevation of 52.9 feet as shown on exhibit 33, a Soil Conservation Service topographical map dated May 3, 1956. The plaintiff was enjoined from entering upon the defendant's land and from permitting waste irrigation water to flow upon the defendant's land. The defendant was awarded damages in the amount of $288. The plaintiff has appealed. There is no cross-appeal.

The general rules applicable in this type of case were stated in *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962). Lower lands are under a natural servitude to receive the surface water of higher lands flowing along accustomed and natural drainways. Such waters are not diffused surface waters and may not be dammed, repelled, or diverted without liability.

A lower landowner who builds a structure across a natural drainway must provide for the natural passage through such obstruction of all the water which may be reasonably anticipated to drain therein.

The owner of the higher land may not collect waters upon his land and discharge them in greater quantity than what would have reached the lower land by natural drainage. *Young v. City of Scribner*, 171 Neb. 544, 106 N.W.2d 864 (1960). Waste irrigation waters are not surface waters which may be discharged into a drainway as a matter of right, and such waters may not be discharged in injurious quantities. *Peters v. Langrehr*, 188 Neb. 480, 197 N.W.2d 698 (1972).

The plaintiff's contention seems to be that the judgment of the District Court permits the defendant to maintain a dam across a natural drainway so that water which would flow naturally onto the defendant's land is prevented from entering upon his land. We conclude the record does not support this contention.

In resolving the conflicts in the evidence, we consider that the trial court saw and heard the witnesses and, at the request of the parties, viewed the premises.

The record shows that a topographical map of the defendant's land was prepared in 1956 by the Soil Conservation Service. This map, which is exhibit 33 in the record, is the map referred to in the judgment. It was made before any leveling had been done upon the defendant's land and reflects the contours of the land as it existed in its natural state. The map shows a low area along the north line of the defendant's property. The lowest point is approximately 550 feet east of the west line and has an assumed elevation of 51.0 feet. The lowest point at which water could escape to the south from this area is approximately 1,000 feet south of the north line and has an elevation of 52.9 feet, 1.9 feet higher than the low point along the north line of the defendant's property.

The record in this case is not as satisfactory as it might be because there is no survey which correlates the elevation of the land on each side of the boundary between the tracts. However, it is quite clear that the ridge or raised area along the boundary has existed for many years with the result that all surface water from the plaintiff's land did not drain onto the defendant's land. Water would pond on the plaintiff's land until it had accumulated to an extent sufficient to flow over the top of the raised area.

Upon the record in this case, we think the trial court arrived at a proper resolution of the dispute between the parties. The effect of the judgment is to put the parties in approximately the same position they were in before the contours and elevations of the land were changed. Water draining to the south on the plaintiff's land will be prevented from entering onto the defendant's land until it reaches the flow line of the culvert which the defendant will be required to maintain. The flow line of the culvert is the lowest point at which water could escape to the south from the basin area before any leveling was done. The culvert eliminates ponding on the plaintiff's land due to the increase in the elevation of the raised area along the

north line of the defendant's land, which occurred in 1974.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurs in result.