RICHARD BOHATY AND IRENE BOHATY, APPELLEES, V. LLOYD A. BRIARD AND WAYNE E. BRIARD, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLANTS AND CROSS-APPELLEES, LUMIR ADRIAN JEDLICKA, CONNIE JEDLICKA, DOROTHY C. JEDLICKA, AND LUMIR JEDLICKA, THIRD-PARTY DEFENDANTS, APPELLEES AND CROSS-APPELLANTS, GRACE R. JEDLICKA ET AL., THIRD-PARTY DEFENDANTS, APPELLEES, VERNON BRIARD AND STELLA BRIARD, THIRD-PARTY DEFENDANTS, APPELLANTS AND CROSS-APPELLEES.

361 N.W.2d 502

Filed January 11, 1985.   No. 82-553.

Edward Asche, for appellants.

Larry J. Karel, for appellees Lumir Adrian Jedlicka et al. and Grace R. Jedlicka et al.

George E. McNally, for appellees Bohaty.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Due to the complex nature of events surrounding the serpentine Bohaty-Briard ditch, the following map should be examined in conjunction with the factual recitation and claims of the parties regarding tracts in Section 4, Township 17 North, Range 4 East of the 6th P.M., Colfax County, Nebraska.

Initially, Richard and Irene Bohaty, owners of tract IV, sued for an injunction to require Lloyd A. (now deceased) and Wayne E. Briard, owners of tracts V and VI, to remove an earthen dam obstructing the flow of water in the Bohaty-Briard ditch, a natural watercourse.

Briards impleaded 11 parties alleged to have an interest in the litigation, including Lumir A. and Dorothy Jedlicka (tract I), Grace and Clay Jedlicka (tract II), and Joseph and Marcella Maca (tract III), and sought an injunction prohibiting discharge of waste irrigation water.

Bohatys stipulated with Briards and Jedlickas that the ditch east of Bohatys' and through Briards' and Jedlickas' will be deepened and widened to carry the necessary flow of water and the obstruction removed, and so maintained. Consequently, Bohatys did not participate in the trial. Additionally, Macas

were dismissed from the lawsuit and no appeal taken.

The pleadings of the parties admit that the obstruction initially placed in the Bohaty-Briard ditch had been constructed in a natural watercourse. See Neb. Rev. Stat. § 31-202 (Reissue 1984) ("Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse.").

As indicated on the map, the Bohaty-Briard ditch entered tract IV from the west, crossed northeasterly into tract I, looped southward and entered tract V, turned and reentered tract I, and crossed back into tract V, thence southward to the Platte River.

For more efficient farming Lumir Jedlicka and Briards eliminated the horseshoe curves from the Bohaty-Briard ditch. Removal of the horseshoes caused a new drain course roughly following the boundary between tracts I and V. Jedlicka also leveled tract I to permit irrigation with a fall from west to east and constructed a reuse pit in the southeast corner of tract I to collect waste irrigation water. Water from the reuse pit flowed onto Briards (tract V) in the Bohaty-Briard ditch. Tract II was, likewise, leveled for irrigation with a west-to-east fall. Leveling tract II slightly elevated the west side of this tract. Tract II naturally drains onto tract III and eventually into a ditch located at some point beyond tract III. However, no water from tract II presently enters the Bohaty-Briard ditch.

Briards complain that the irrigation leveling north of their land on tracts I and II has diverted onto their land surface water which normally drained eastward across tracts II and III.

Lumir Jedlicka (tract I) contends that no water, surface or irrigation, would ever reach tract III from tract I; rather, the entire flow from tract I entered the Bohaty-Briard ditch at points within tract I or at points within tract VI, where water flowed through a low-lying area crossing tracts I, II, and VI.

James McMeekin, a licensed engineer for Briards, testified that approximately 60 of the 80 acres in tract I drained into the Bohaty-Briard ditch at points within tract I. Water from the remaining 20 acres located in the northeast quadrant of tract I drained easterly across tract II and entered a ditch on tract III as a conduit to another ditch on the east boundary of tract III,

thence into the Platte River.

Tract I was leveled to allow irrigation in a west-to-east direction, but also to eliminate a number of low areas or potholes where water had collected and stood.

On the east side of tract I there is a depression caused by the elevation of the west side of tract II. Such elevation obstructs eastward flow from tract I so that water collects on the east side of tract I and eventually drains into the reuse pit in the southeast corner of the tract.

Jim Coen, a licensed engineer, testified that drainage from the entire 80 acres in tract I entered the Bohaty-Briard ditch. Part of the drainage entered the ditch by way of a swale at points in tract VI, while part entered at points within tract I. Thus, drainage from tract I entered tract VI through a low-lying area traversing tracts I, II, and VI in a southeasterly direction. The relative contour lines of the tracts, as well as interpolative data, indicate that at least 50 to 60 of the 80 acres in tract I drain through this gently sloping swale. Lumir Jedlicka testified that he has had problems farming, when his tractor occasionally became stuck in the aforementioned soggy, low-lying area. The location where Jedlicka encountered such difficulty coincides with the area designated by Coen as the swale traversing tracts I, II, and VI. Aerial photographs depict heavier and greener foliage along the fence line between tracts I and II, where water naturally flowed prior to the leveling in tract II. Such dense foliage is attributable to water collecting in the swale along the boundary of tracts I and II. This swale or low-lying area does not meet the statutory definition of a watercourse set forth in § 31-202.

The district court found that 60 acres of the 80 acres in tract I normally drained into the Bohaty-Briard ditch. Based on that finding, the district court issued a mandatory injunction requiring Briards to remove any obstruction from the Bohaty-Briard ditch and enjoined the Jedlickas (tract I) from discharging waste irrigation water upon Briards.

Briards contend there has been error (1) in issuance of the mandatory injunction for removal of obstruction in the Bohaty-Briard ditch, because any obstruction had been removed at the time of trial in accordance with the parties'

stipulation; (2) in finding that approximately 60 of the 80 acres in tract I normally drained into the Bohaty-Briard ditch; (3) in allowing Jedlickas (tract II) to drain water on Briards', because there is no evidence of such drainage and, therefore, no issue in the proceedings; (4) in not ordering removal of the obstruction on tract II so that drainage continued to flow easterly across tract II; and (5) in taxing costs against the appellants.

Jedlickas (tract I) cross-appeal and assign as error the district court's (1) finding that only 60 of the 80 acres of tract I drained into the Bohaty-Briard ditch; (2) failing to recognize that an owner may drain land into any natural watercourse; (3) enjoining discharge of waste irrigation water on Briards' property, because the source of some waste irrigation water was land owned by persons who are not parties to the lawsuit; and (4) taxing costs to Jedlickas.

We dispose of several assignments of error by noting that the briefs do not contain argument on certain errors assigned by the parties. *Argument* is "[a]n effort to establish belief by a course of reasoning." Black's Law Dictionary 98 (5th ed. 1979). Because the assignments of error are not supported by accompanying argument in the briefs, but are mere statements of general dissatisfaction with conclusions reached by the trial court, we will not speculate about the reasoning behind dissatisfaction of the parties. Without argument and authority in support of an advocated position, speculation is unavoidable. Consequently, we need not respond to Briards' assignments of error concerning absolution of the owners of tract II from liability for irrigation water. Likewise, we do not address the question of costs taxed to the parties. See, Neb. Ct. R. 9D(1)(d) (Rev. 1983); *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983). In a similar manner we have disposed of Briards' and Jedlickas' remaining but unargued assignments of error.

Apart from the rules of practice, Briards' assignment of error with regard to the mandatory injunction requiring removal of the dam-obstruction from the Bohaty-Briard ditch is without merit. The mandatory injunction is simply judicial recognition of the stipulation entered by the parties and prepared with their participation and consent. Briards cannot

complain about entry of an order which is the consequence of their own efforts. It has long been settled in the State of Nebraska that a party cannot complain of error which he has invited. *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978).

Briards' complaint about the finding that 60 of the 80 acres in tract I drained into the Bohaty-Briard ditch is resolved by the presence of evidence sufficient to sustain a finding by the district court and now made by this court.

Concerning drainage from tract I across tract II into tract III, the water moved in a diffused state across the boundaries.

> Surface waters are waters which appear upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily result from rainfall or melting snow.
>
> . . . .
>
> . . . Diffused surface waters may be dammed, diverted, or otherwise repelled, if necessary, in the absence of negligence.

*Kuta v. Flynn*, 182 Neb. 479, 481, 483, 155 N.W.2d 795, 797-98 (1968). See, also, *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962).

> [W]hen diffused surface waters are concentrated in volume and velocity and flow into a natural depression, draw, swale, or other drainway, the rule as to diffused surface waters does not apply. . . . "[A] natural drainway must be kept open to carry the water into the streams, and as against the rights of the upper proprietor, the lower proprietor cannot obstruct surface water when it has found its way to and is running in a natural drainage channel or depression. . . ."

*Nichol v. Yocum, supra* at 306, 113 N.W.2d at 200. See, also, *Paasch v. Brown*, 190 Neb. 421, 208 N.W.2d 695 (1973).

Coen, Jedlickas' expert witness, presented the only testimony about the low-lying area through which water flowed eastward across tracts I and II. There was absolutely no testimony that there was any flow of water concentrated in volume and velocity to the extent that drainage lost its character as surface water. Therefore, Briards have failed to show that the owners of tract II could not repel surface water draining onto

tract II.

Regarding the drainage dispute about the 20 acres in tract I, Coen concluded that all water from tract I eventually entered the Bohaty-Briard ditch after coursing southeastward into tract II and then southward into tract VI. Briards have failed to meet the burden of factually establishing a watercourse or natural drain from tract I to tract II and, therefore, are not entitled to injunctive relief. See *Grint v. Hart,* 216 Neb. 406, 409, 343 N.W.2d 921, 924 (1984) ("[A] party seeking an injunction must establish by competent evidence every controverted fact necessary to entitle him to relief.").

The experts testified that the reuse pit constructed in the southeast corner of tract I is sufficient to hold all irrigation runoff incidental to the cultivation on tract I. There is no claim that Jedlickas were negligent and no evidence that Briards sustained damage as a result of irrigation waters. The primary dispute exists with respect to additional surface waters resulting from the land leveling. There is no question that the reuse pit is adequate to accommodate waste irrigation water.

> "An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence."

*Nickman v. Kirschner,* 202 Neb. 78, 82, 273 N.W.2d 675, 678 (1979). According to Briards' expert witness, leveling tract I added to the area presently drained into the Bohaty-Briard ditch across Briards' property. The additional volume of water which resulted from the collection of surface waters in an artificial drain constructed for the purpose of draining temporary ponds or basins is a burden which a subservient estate (Briards) must accept. See *Nickman v. Kirschner, supra.*

Neb. Rev. Stat. § 31-201 (Reissue 1984) provides:

Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation.

If Jedlickas, owners of tract I, had not leveled their land to drain in a southerly direction, the elevation of the west side of tract II would have rendered the east part of tract I unfarmable. The question is whether the alteration of drainage on tract I is in the "general course of natural drainage" as used in § 31-201.

This appears to be a question of first impression in Nebraska inasmuch as this court has never interpreted the phrase "in the general course of natural drainage." It is uncontroverted that the reuse pit drains into a natural watercourse that reaches the Platte River. The remainder of Section 17 also drains in the same general direction to the Platte River. Although conflicting testimony was presented with regard to the direction of the drainage in question, we find that the testimony of the Jedlickas' expert is particularly persuasive when taken in conjunction with the testimony of Lumir Jedlicka that a low-lying area or draw exists and runs in a southeasterly direction on tract I through which diffused surface waters eventually reached the Bohaty-Briard ditch in tract VI.

If we accept that 20 acres of tract I did drain southeasterly directly through the low-lying area and eventually reached the Bohaty-Briard ditch in tract VI, we conclude that Jedlickas' altering the drainage pattern on tract I provided an earlier entry of water from the 20 acres in the northeast quadrant of tract I. Such altered drainage was within the general course of drainage within the meaning of § 31-201. The only effect of the altered drainage was entry of water from 20 acres at a point upstream from the area where drainage would have eventually entered the Bohaty-Briard ditch had such upstream entry not been constructed. It is clear that the natural watercourse (Bohaty-Briard ditch) into which waters from tract I are drained is the only drain reasonably available to Jedlickas. The

drainage along the eastern part of tract I is consistent with the general course of drainage throughout the area involved. Jedlickas were entitled to drain the property as they did.

By our holding we do not state or imply that the alteration of natural drainage patterns pursuant to § 31-201 will be legally acceptable in every case. Alteration of natural drainage is acceptable only where the interests of good husbandry are served, circumstances are such that alteration is necessary, and the particular alteration is reasonable under all the circumstances present. As expressed in *Templeton v. Huss*, 57 Ill. 2d 134, 141, 311 N.E.2d 141, 145-46 (1974):

> [I]t is sufficient to say that our cases do not support the defendants' contention that they had an unlimited right to increase the rate or amount of surface-water runoff flowing onto plaintiff's land, regardless of the cause or extent of the increase.
>
> Interference with natural drainage has been limited to that which was incidental to the reasonable development of the dominant estate for agricultural purposes. . . .
>
> The question which must be confronted is whether the increased flow of surface waters from the land of the defendants to that of the plaintiff . . . was beyond a range consistent with the policy of reasonableness of use which led initially to the good-husbandry exception.

Further, in *Delano v. Collins*, 49 Ill. App. 3d 791, 795, 364 N.E.2d 716, 720 (1977), relying on *Templeton*, the court held: "Both the text of the opinion [*Templeton*] and the general rules of law would place upon plaintiffs a burden of proof that the acts of the defendants were beyond a range consistent with the policy of reasonable use." The holding in *Delano* is consistent with our rule set forth in *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984).

We reverse the district court's judgment regarding the injunction placed upon the Jedlickas' drainage of their 20 acres in tract I and hold that the Jedlickas may properly drain surface waters from tract I into the Bohaty-Briard ditch. Further, the injunction against Jedlickas regarding waste irrigation water is incorrect and must be dissolved inasmuch as there has been no showing that Briards have sustained injury caused by waste

irrigation water. See *Peters v. Langrehr*, 188 Neb. 480, 197 N.W.2d 698 (1972). Consequently, the district court's injunctions regarding drainage of the 20 acres in tract I and waste irrigation water from tract I shall be dissolved in accordance with this opinion. In all other respects the judgment of the district court is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED WITH DIRECTIONS.