JERRY DOBIAS ET AL., APPELLANTS, V. SERVICE LIFE INSURANCE COMPANY OF OMAHA, APPELLEE.

469 N.W.2d 143

Filed May 10, 1991.   No. 89-231.

John Thomas and Gregory M. Neuhaus for appellants.

Scott J. Norby, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

The plaintiffs, Jerry and Anne Dobias and their daughter Pam, appeal the order of the district court overruling their motion for new trial. The Dobiases had filed this action against

the defendant, Service Life Insurance Company of Omaha, for its failure to pay benefits under a health insurance policy. The district court entered judgment for the defendant, finding that the policy did not cover the services received by Pam Dobias when she was a patient at the Immanuel Medical Center's rehabilitation center.

In August 1987, Pam, then 18, was thrown from a pickup truck which overturned. She was taken to a local hospital. She had fractured a vertebra in her back and was flown by Life Flight to Nebraska Methodist Hospital in Omaha. She remained there for 15 days following surgery (a decompression laminectomy and the insertion of Harrington rods to stabilize and support her spine).

Because of her spinal cord injury, Pam was paralyzed from the waist down and faced a number of complications. Her doctors then transferred her to the rehabilitation center at Immanuel Medical Center (Immanuel).

At Immanuel, Pam was placed on the eighth floor, where she received 24-hour acute nursing care and treatment for the complications from the spinal cord injury and paralysis. She suffered from a paralyzed bladder, multiple urinary tract infections, and neuropathic pain due to damage in the spinal cord. She needed training to regulate her bowels, she was given heparin to prevent blood clotting in the legs, and she was placed on a tilt table to regulate her blood pressure. She received treatment for spasticity, and she was observed for the development of decubitus ulcers of the skin, stress ulcer, and occult head injuries such as subdural hematoma. Pam also received anesthetic skin care training and other therapy before she was released to go home on October 30, 1987, after 74 days at Immanuel.

Pam's father had purchased a health insurance policy from the defendant in 1984. Upon submission of a claim, Service Life paid $12,303.91 for Pam's treatment at Methodist, but denied the claim for $42,757.49 for services and care at Immanuel. The insurance company contended that Pam received rehabilitative care, which is not covered by the policy. The Dobiases filed suit in district court, where judgment was entered for the defendant. This appeal followed.

At issue are two definitions in the policy—part E, paragraphs 14 and 15:

(14) "Hospital" means a place which:

(a) is legally operated for the care and treatment of sick and injured persons on an in-patient basis at their expense;

(b) is primarily engaged in providing medical, diagnostic, and major surgical facilities on its own premises or has them available on a prearranged basis;

(c) has continuous 24-hour nursing services by or under the supervision of registered graduate professional nurses (R.N.'s);

(d) has a staff of one or more doctors available at all times.

(15) "Hospital" does not mean:

(a) convalescent, nursing, rest, custodial, self-care, educational, or rehabilitative homes or units of hospitals used for such care;

(b) facilities primarily treating the mentally ill, aged, drug addicts, or alcoholics.

In finding that the charges were not covered, the trial court held that the policy was clear and unambiguous and that the Immanuel rehabilitation center was not a "hospital," but a separate and distinct unit of Immanuel devoted exclusively to rehabilitation. The plaintiffs-appellants assert as error the trial court's finding that the policy clearly and unambiguously excluded the Immanuel rehabilitation center from the definition of "hospital." The Dobiases suggest that the trial court should have found that the policy was fairly subject to two interpretations and that the trial court should have chosen the interpretation favorable to coverage of Pam's treatment at Immanuel.

When, as in this case, the facts were submitted by stipulation, "we review this case as if trying it originally in order to determine whether the facts warranted the judgment." *Dugdale of Nebraska v. First State Bank*, 227 Neb. 729, 731, 420 N.W.2d 273, 275 (1988).

We note first the standards we use in reviewing an insurance policy.

An insurance policy is to be construed as any other

contract to give effect to the parties' intentions at the time the contract was made. . . . Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. . . . On the other hand, where a clause in an insurance contract can be fairly interpreted in more than one way, there is ambiguity to be resolved by the court as a matter of law.

(Citations omitted.) *Malerbi v. Central Reserve Life*, 225 Neb. 543, 550-51, 407 N.W.2d 157, 162 (1987).

Evidence was received from Patrick Beste, the administrative director of the Immanuel rehabilitation center, who indicated that the center is made up of 78 beds licensed as rehabilitation acute care beds on the eighth floor of Immanuel, which is licensed as a hospital. The eighth-floor rooms are similar to acute care hospital rooms, and Beste testified that the eighth floor meets the Service Life policy definition of a hospital. He said that Pam could have been housed on another floor of the hospital, but she would not have received the same level of care. When the eighth floor is filled, rehabilitation patients may be housed on other floors of the medical center.

Dr. Kip Burkman, a rehabilitation physician at Immanuel who treated Pam, testified that the eighth floor is a part of the medical center. He stated that Pam needed acute inpatient rehabilitation care when she arrived at Immanuel, including 24-hour nursing to monitor for possible multiple complications. Dr. Burkman testified that an internal medical doctor was asked to consult on Pam's case to screen for major medical problems. While at Immanuel, Pam received therapy which was medically necessary and not available at other health care facilities, Dr. Burkman said.

Jerry and Anne Dobias both testified that they were not consulted about Pam's transfer to Immanuel. Both said they understood the insurance policy to cover everything except nursing home and convalescent care.

Barry Malone, vice president for corporate compliance for Service Life, testified that the Dobias claim was denied because Pam received rehabilitation services. The company did not have the medical records reviewed by a physician or ask Pam's doctors whether she was receiving acute care. Malone stated

that no definition of rehabilitative home is provided in the policy and admitted that Service Life would have paid for Pam's coverage if she had stayed at Methodist after August 17, 1987.

It is clear from the evidence presented to us that the eighth-floor rehabilitation center at Immanuel meets the criteria of the policy definition of "hospital": It is legally operated for the care and treatment of sick and injured persons on an inpatient basis; it is primarily engaged in providing medical, diagnostic, and major surgical facilities on its own premises; it has continuous 24-hour nursing services; and it has a staff of doctors available at all times.

When Pam was transferred to Immanuel, she was still in need of acute medical care in order to keep her alive. Any rehabilitative care which she received at Immanuel was incidental to the acute hospital care necessary to avoid the life-threatening complications she faced as a result of the spinal cord injury and paralysis. She received the services while she was a patient on a particular floor of a hospital which met the requirements of the hospital definition in the insurance policy. A hospital, by any other name, still provides acute medical care, and Pam received acute medical care at Immanuel. It follows that Immanuel qualifies as a hospital under the policy definition.

We must reconcile the provisions of the insurance policy. In doing so, we are asked if Pam was primarily rendered rehabilitative care in a facility which has coincidentally been named a "rehabilitation center." Our answer is no. At Immanuel, Pam received primarily acute care for treatment of her paralyzed bowel and bladder and of multiple urinary tract infections, for prevention of skin ulcers and stress ulcers and of blood clotting in her legs, for regulation of her blood pressure, and for observation of possible later developing occult head injuries.

The care received at Immanuel was care received in a hospital as it is defined in the policy. The trial court's finding was in error, and we reverse and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.