DON L. THORELL AND KRISTI THORELL, APPELLEES AND
CROSS-APPELLANTS, V. UNION INSURANCE COMPANY, A NEBRASKA
CORPORATION, APPELLANT AND CROSS-APPELLEE.

492 N.W.2d 879

Filed December 18, 1992.   No. S-90-199.

James A. Beltzer, of Luebs, Beltzer, Leininger, Smith &
Busick, for appellant.

Richard A. Drews, of Brashear & Ginn, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, GRANT, and
FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Union Insurance Co. (Union) appeals from a judgment based upon a jury verdict awarding Don L. and Kristi Thorell $55,217.50 under their homeowners policy for water damage to the contents of the Thorells' walkout basement.

The Thorells cross-appeal from a judgment based upon the jury's verdict that Union's policy did not cover damage to their dwelling.

We reverse the judgment in favor of the Thorells and remand the cause to the district court for Phelps County with directions to dismiss the petition.

Although Union has made numerous assignments of error, we need consider only one, that the trial court erred in failing to direct a verdict in Union's favor at the close of all the evidence.

## DIRECTED VERDICT

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Leonard v. Wilson*, 238 Neb. 1, 468 N.W.2d 604 (1991); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

## FACTS

Resolving all controverted facts in favor of the Thorells, and giving them the benefit of every inference which can be drawn from the evidence, the facts of this case are as follows:

The Thorells are the owners of a ranch-style home located $1^1/_2$ miles southeast of Loomis, Nebraska. The house has a walkout basement which opens to the west. There is a 3-foot semicircular berm approximately 300 feet to the west of the house. It was constructed in 1984 to prevent water from coming into the house from a draw to the west of the berm.

On the evening of June 28, 1987, while the Thorells were

away from home, a severe rainstorm preceded by high winds struck the area. As much as 4³/₄ inches of rain fell in 30 minutes to an hour. After the storm, a neighbor who lived west of the Thorells saw water moving eastward toward the Thorells' property. The neighbor testified that the water which flowed toward the Thorells' house could only have come from an area directly west of the house, because there were no other bodies of water in the area other than a small dam. In the neighbor's opinion, the dam would have no effect on the amount of water which flowed toward the Thorells' home.

A second neighbor and then the Thorells' son, Mike, checked the Thorell home between 10:30 and 11 p.m. on June 28, and both noted approximately 4 feet of water in the basement. The neighbor also recalled seeing a 2 by 4 board floating in the water and hearing the sound of water running on the west side of the Thorells' home. Both the neighbor and Mike Thorell were able to see water west of the Thorells' house. Before the storm, some 2 by 4's and 2 by 6's had been stacked on an L-shaped deck built around the southwest corner of the house. The deck was approximately 10 feet off the ground.

The following morning, Mike Thorell returned to his parents' home. A picture window he described as 2 by 5 feet, which was one of four windows on the west side of the walkout basement, was broken, and the interior of the basement was extensively damaged by mud and water.

The Thorells' claim under their homeowners policy with Union was denied, and the Thorells then sued Union. Union claims that the damage to the Thorell home is not covered by their homeowners policy because the damage was caused by "surface water" or a "flood" and the policy specifically excludes damage from these occurrences. The Thorells argue that the initial damage to the dwelling was caused by wind propelling a 2 by 4 off the deck and through the basement window, which allowed the entry of "rain," and that these are covered perils under their policy with Union.

The trial court found that Union's insurance policy is ambiguous as to the coverage for the contents of the dwelling, and submitted the interpretation of the policy to the jury. The jury returned a verdict for the Thorells in the amount of

$55,217.50 for damage to the contents of the house. The trial court further found that the terms of the policy were not ambiguous as to coverage of the dwelling itself. The jury found that the damage to the dwelling was not covered by the policy.

Union appealed from the verdict in favor of the Thorells for damage to the contents. The Thorells cross-appealed from the verdict in favor of Union as to damage to the dwelling.

PROVISIONS OF THE POLICY

The homeowners policy issued by Union to the Thorells covering the period November 6, 1986, to November 6, 1987, insured all risks of direct loss to the dwelling except as specified under "Section I—Exclusions." The policy also provided for loss to personal property caused by windstorm or hail. A section entitled "Section I—Perils Insured Against" states in part:

**COVERAGE A—DWELLING** . . .

We insure against risks of direct loss to property described in [Coverage] A . . . *only* if that loss is a physical loss to property; *however, we do not insure loss*:

. . . .

3. *excluded under Section I—Exclusions.*

. . . .

**COVERAGE C—PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below *unless the loss is excluded in Section I—Exclusions.*

. . . .

**2. Windstorm or hail.**

*This peril does not include loss to the property contained in a building caused by rain . . . unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain . . . enters through this opening.*

(Emphasis supplied.)

"**SECTION I—EXCLUSIONS**" provides in part:

*We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in*

*any sequence to the loss.*
. . . .

**c. Water Damage,** meaning:

(1) flood, *surface water*, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

(Emphasis supplied.)

To make a prima facie case for recovery of damage to their dwelling, the Thorells needed only to show that they suffered a "direct loss to property . . . if that loss is a physical loss to property" as required by the policy in **"COVERAGE A—DWELLING."** When bringing an action for breach of an insurance contract, the plaintiff has the burden to bring his claim within the terms of the policy. *Craig v. Farmers Mut. Ins. Co.*, 239 Neb. 271, 476 N.W.2d 529 (1991).

To make a prima facie case for recovery of loss of the contents of their walkout basement, the Thorells were required to show that their personal property loss was caused by a covered peril, that is, that the direct force of wind caused an opening in the wall through which rain entered. In this case, the Thorells allege that the direct force of the wind blew a 2 by 4 through a window, allowing rain to enter and damage the dwelling as well as the contents of the basement. Assuming that the Thorells met their burden of proof, it was then Union's burden to show that the ensuing loss to both the dwelling and the contents was caused by an excluded peril, namely, by surface water. When the insurer's defense is based upon an exclusionary clause in a policy, the burden is on the insurer to prove facts which bring it within the exclusion. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 188 Neb. 470, 197 N.W.2d 396 (1972).

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of the contract are clear, they are to be accorded their plain and ordinary meaning. When a clause can be fairly interpreted in more than one way, there is ambiguity to be resolved by the court as a matter of law. *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987); *Mahoney v. Union Pacific RR. Emp. Hosp. Assn.*, 238

Neb. 531, 471 N.W.2d 438 (1991); *Dobias v. Service Life Ins. Co.*, 238 Neb. 87, 469 N.W.2d 143 (1991).

While an ambiguous policy will be construed in favor of the insured, ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract. See, *Central Waste Sys. v. Granite State Ins. Co.*, 231 Neb. 640, 437 N.W.2d 496 (1989); *Allstate Ins. Co. v. Farmers Mut. Ins. Co. of Nebraska*, 233 Neb. 248, 444 N.W.2d 676 (1989).

The language of the Thorells' insurance policy is not ambiguous. Its terms are clear, and they must be accorded their plain and ordinary meaning. The policy excludes coverage for loss due to "water damage," and more specifically excludes loss due to damage by "surface water." If the damage to the Thorells' home and personal property was caused by surface water, as Union contends, then the policy does not afford coverage for either loss. However, if the damage was caused by rain, as the Thorells insist, then the policy covers damage to the dwelling and may cover damage to the contents of the walkout basement.

"Surface water," sometimes referred to as "diffused surface water," has been defined in Nebraska law as " ' "[water] which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well defined channel in which it is accustomed to and does flow with other waters . . . ." . . .' " *Jack v. Teegarden*, 151 Neb. 309, 314, 37 N.W.2d 387, 391 (1949). Accord, *Schomberg v. Kuther*, 153 Neb. 413, 45 N.W.2d 129 (1950); *Turnell v. Mahlin*, 171 Neb. 513, 106 N.W.2d 693 (1960). See, also, *Rolfsmeyer v. Seward County*, 182 Neb. 348, 154 N.W.2d 752 (1967); *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985); *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991).

The term "rain" apparently has not been defined either statutorily or by case law in Nebraska. This may be because the ordinary meaning of rain is so generally known that it has not been necessary to define it statutorily or by case law.

The Wyoming Supreme Court, in *State Farm Fire and Cas. Co. v. Paulson*, 756 P.2d 764 (Wyo. 1988), decided a

homeowners insurance policy case which is essentially identical to the one before us. The terms of the insurance policy in that case are the same as the terms of the Thorells' policy. In considering the meaning of "rain" as opposed to "surface water," the Wyoming court stated:

> "Rain" is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is "raining" although there may still be wet sidewalks and streets, puddles of water resulting from the rain, or water running through gutters and elsewhere as a result of the rain. It is not common or usual to say in such instances that it is still raining.

*Id.* at 767.

The Wyoming Supreme Court concluded that the terms of the policy were not ambiguous. This is consistent with the decisions of other jurisdictions which have considered the meaning of "surface water" in the context of an insurance policy. See, e.g., *Heller v. Fire Ins. Exchange*, 800 P.2d 1006 (Colo. 1990); *Madison Block Pharmacy v. U. S. Fidelity*, 620 S.W.2d 343 (Mo. 1981); *Hirschfield v. Continental Casualty Company*, 199 Ga. App. 654, 405 S.E.2d 737 (1991); *Casey v. General Acc. Ins. Co.*, 178 A.D.2d 1001, 578 N.Y.S.2d 337 (1991).

We are persuaded by the Wyoming Supreme Court's reasoning that

> [i]f the water which accumulated on the ground and entered the basement window was still "rain," then there is either no such thing as "surface water," or "rain" and "surface water" are synonymous. Obviously, there is such a thing as "surface water"—at least in the minds of the parties to the contract in which they used the term. And if the two terms are synonymous, then the exclusion provision of the policy for "surface water" also applies to "rain," and there is no coverage.

*State Farm Fire and Cas. Co. v. Paulson*, 756 P.2d at 767-68.

Trial testimony indicated that approximately 4³/₄ inches of rain fell in the vicinity of the Thorell home on June 28, 1987. In contrast, there was approximately 4 feet of water in the Thorell basement after the storm, which is distinctly different from the

documented rainfall.

The evidence is uncontroverted that on the night in question, heavy rainfall caused a large volume of water to collect within an area circumscribed by an earthen berm west of the Thorell home. A broken window allowed this diffused water to flow into the basement to a depth of 4 feet. When the water receded, it left 4 inches of mud on the basement carpeting. From the evidence in this case, reasonable minds can draw but one conclusion as to the type of water that damaged the Thorells' home and personal possessions. It was surface water, not rain. Surface water damage to both the dwelling and the contents is a risk that is excluded from coverage by the express terms of the Thorells' insurance policy with Union. Therefore, Union was entitled to a directed verdict as a matter of law on both of the Thorells' causes of action at the close of all the evidence. Because the evidence established as a matter of law that the Thorells' damage to their dwelling was caused by surface water, it is unnecessary to reach the assignments of error on their cross-appeal.

The judgment in favor of the Thorells for damage to the contents of their walkout basement is reversed and the entire cause remanded to the district court for Phelps County with instructions to dismiss the Thorells' petition.

REVERSED AND REMANDED WITH DIRECTIONS.

SHANAHAN, J., not participating.