GEORGETOWNE SQUARE, A NEBRASKA PARTNERSHIP, APPELLANT, V.
UNITED STATES FIDELITY AND GUARANTY COMPANY, APPELLEE.

523 N.W.2d 380

Filed October 4, 1994.   No. A-93-132.

Michael F. Kinney and Helarie H. Hollenbeck, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Lisa M. Meyer and David D. Ernst, of Gaines, Mullen, Pansing & Hogan, for appellee.

SIEVERS, Chief Judge, and CONNOLLY and HANNON, Judges.

HANNON, Judge.

Georgetowne Square (Georgetowne), the appellant, insured its property by a "Builders Risk" insurance policy issued by United States Fidelity and Guaranty Company (Fidelity), the appellee. A retaining wall on the insured property was damaged by water and water pressure emanating from an underground pipe that drained water from the roof of a neighbor's building. Georgetowne made claim for damages. Fidelity denied the claim on the basis that a policy provision excluded coverage for damages resulting from flooding, which term was defined under the policy to include "run-off" and "surface water." Georgetowne commenced this action, and a trial was held based upon stipulated facts. The trial court dismissed the petition because it determined the policy excluded coverage for the loss claimed. Georgetowne appeals. We conclude that the damage was not caused by either surface water or runoff, and we reverse the judgment and remand the cause with directions to enter judgment for Georgetowne for the amount of the stipulated damages.

## STIPULATED FACTS

The case was tried on a stipulation of facts. The stipulation included the insurance policy and two small photographs depicting the drainage pipe and the damage to Georgetowne's wall on its property. One photograph shows a significant section of the wall between Georgetowne's lot and the adjoining lot. The ground level of the adjoining lot is 3 to 4 feet higher than Georgetowne's lot and is hard surfaced. The vertical wall separating the properties extends from the ground level of Georgetowne's lot up to the ground level of the adjoining lot. The wall is constructed with 4- by 4-inch timbers stacked horizontally and staggered in the manner bricks are staggered in a wall. In the photograph, the wall bows out at one point, and this is the section of wall for which Georgetowne claims damages caused by the drainage of water. A 2- or 3-foot space

behind the wall is excavated in the area where the wall is bowed. The written stipulation states this photograph fairly and accurately portrays "the damage inflicted on the wall."

The other photograph shows a small dirt embankment with a hard surface both above and below the embankment. An old, bent pipe protrudes for a few inches from the embankment at a point near the bottom of the embankment. A black flexible tube protrudes a few feet out of the old pipe, and it appears to be the end of a liner that was placed in the existing drain. The stipulation states the photograph "fairly and accurately depicts the drainage pipe in question as it appeared after the damage to the retaining wall."

The part of the stipulation concerning the causation of the damage states:

> Said wall was damaged due to the build-up of water underground and water pressure underground which emanated from an underground drainage pipe. Said drainage pipe extended underground from the property to the immediate west of the subject property to the subject property. Said drainage pipe was located approximately 4 feet below surface and extended underground approximately 80-100 feet back to a structure on the property adjacent to the west side of plaintiff's property. The water which entered and departed the underground drainage pipe was water which flowed from the roof of the structure on the adjoining property and which was the result of rain or melted snowfall.

The parties also stipulated that Georgetowne suffered damages to the retaining wall in the amount of $19,034.05 and that this is an insured loss, "unless Exclusion k . . . is found to apply to this loss." The "Exclusions" section provides:

> [Fidelity] will not pay for "loss" caused by or resulting from any of the following:
>
> . . . .
>
> **k.** Flood, unless a Limit of Insurance is specifically shown for this coverage in the Declarations. Flood means waves, surface water, run-off, tides or tidal water, and the rising out of or overflowing of any body of water, whether or not driven by wind.

Georgetowne also maintains that even if exclusion k applies to exclude coverage, the loss is still covered by a specific exception contained in exclusion i. Exclusion i reads as follows: "i. Rain, snow, ice, or sleet, whether or not they are driven by wind. But we will pay for "loss" due to collapse of building or structure caused by the weight of rain, snow, ice, or sleet."

## TRIAL COURT'S RULING

On January 26, 1993, the trial court entered an order dismissing Georgetowne's petition, stating that exclusion k applied:

> It seems quite clear to the Court that this is "run off water". No definition or explanation was given as to what exactly, or not so exactly, run off water consists of, however, the term itself gives the Court all the help it needs in arriving at the conclusion that this is run off water.

The trial court also rejected Georgetowne's argument that the exception to exclusion i of the policy provided coverage for damage caused to a structure or building from "the weight of rain, snow, ice, or sleet."

## ASSIGNMENTS OF ERROR

Georgetowne makes nine separate assignments of error, but these assignments essentially state two errors; that is, the trial court erred in (1) finding that exclusion k of the policy applied and excluded Georgetowne's claim for damages from coverage, based on the stipulated facts, and (2) finding that the exception to exclusion i of the policy was not applicable to the damages claimed by Georgetowne under the stipulated facts.

## SCOPE OF REVIEW

Regarding questions of law, an appellate court is obliged to reach a conclusion independent of the decision reached by the trial court. *Powell v. American Charter Fed. Sav. & Loan Assn.*, 245 Neb. 551, 514 N.W.2d 326 (1994); *State ex rel. Grams v. Beach*, 243 Neb. 126, 498 N.W.2d 83 (1993); *Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993). The construction of a contract is a question of law. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

■ Fidelity argues that the trial court found the rain and melted snow draining from the roof was runoff, that there is sufficient evidence to support that finding, and therefore that this finding is binding on this court. Fidelity's position is in error. In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment. *Dobias v. Service Life Ins. Co.*, 238 Neb. 87, 469 N.W.2d 143 (1991). The questions presented by the case at hand are questions of law, not of fact.

## DISCUSSION

We shall consider the last assignment of error first. The policy provides Fidelity would pay for a loss due to the collapse of a building or structure caused by the weight of rain, snow, ice, or sleet. The stipulation provides that the damage was "due to the build-up of water underground and water pressure underground which emanated from an underground drainage pipe." Under the stipulation, the damage was not caused by the weight of rain, snow, ice, or sleet. The trial court clearly did not err in determining the loss was not covered under the exception contained in exclusion i.

The resolution of this case turns upon the meanings of "flood," "run-off," and "surface water" under exclusion k. The policy provides that "[f]lood means waves, surface water, run-off, tides or tidal water, and the rising out of or overflowing of any body of water, whether or not driven by wind." Under the stipulation, the parties herein agreed that the water which drained through the pipe "was the result of rain or melted snowfall." The trial court determined that the water damage sustained by Georgetowne was a result of "run-off." In order for exclusion k to apply, the water damage suffered by Georgetowne must be from either surface water or runoff, as the other types of water set forth under exclusion k clearly do not apply.

### PRINCIPLES OF CONSTRUCTION

■ We recognize the rule that an insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. When the terms of

such a contract are clear, they are to be accorded their plain and ordinary meaning. *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992); *Dobias v. Service Life Ins. Co.*, 238 Neb. 87, 469 N.W.2d 143 (1991). However, if an ambiguity as to the terms of the contract exists, the contract will be construed against the party who prepared it. *Mahoney v. Union Pacific RR. Emp. Hosp. Assn.*, 238 Neb. 531, 471 N.W.2d 438 (1991). When a clause of an insurance policy can be fairly interpreted in more than one way, there is an ambiguity to be resolved by the court as a matter of law. *Thorell, supra.* Further, when an insurer's defense is based upon an exclusionary clause in the policy, the burden is on the insurer to prove facts which bring it within the exclusion. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 188 Neb. 470, 197 N.W.2d 396 (1972).

"SURFACE WATER" DEFINED

■ Nebraska case law has long held that rain or melted snowfall is considered "surface water." In *Thorell*, 242 Neb. at 62, 492 N.W.2d at 883, the Supreme Court held the following:

"Surface water," sometimes referred to as "diffused surface water," has been defined in Nebraska law as " ' "[water] which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well defined channel in which it is accustomed to and does flow with other waters . . . ." . . .' "

Accord, *Shotkoski v. Prososki*, 219 Neb. 213, 362 N.W.2d 59 (1985); *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985); *LaPuzza v. Sedlacek*, 218 Neb. 285, 353 N.W.2d 17 (1984); *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984); *Kuta v. Flynn*, 182 Neb. 479, 155 N.W.2d 795 (1968); *Rolfsmeyer v. Seward County*, 182 Neb. 348, 154 N.W.2d 752 (1967). See, also, Restatement (Second) of Torts § 846 at 199 (1979) (defining surface water as "water from rain, melting snow, springs or seepage, or detached from subsiding floods, that lies or flows on the surface of the earth but does not form a part of a watercourse or lake").

■ The cases in Nebraska also emphasize that the definition of surface water involves the "natural" drainage of such water.

In *Schomberg v. Kuther*, 153 Neb. 413, 427, 45 N.W.2d 129, 137 (1950), the court stated, " 'A proprietor may not collect surface waters on his estate into a ditch or drain and discharge them in a volume on the lands of his neighbor, nor can he divert them so they go in a direction different from the natural flow.' " Accord *Rolfsmeyer, supra.* Surface water is water " 'carried off by surface drainage, that is, drainage independent of a watercourse. . . .' " *Bahm v. Raikes*, 160 Neb. 503, 515, 70 N.W.2d 507, 513 (1955). More recently, the court restated the following rule:

> " ' "Surface waters cease to be such when they empty into and become part of a natural stream or lake, but they do not lose their character as such by reason of their flowing from the land on which they first make their appearance onto lower land in obedience to the law of gravity, or by flowing into a natural basin from which they normally disappear through evaporation or percolation . . . ." ' "

*Sullivan v. Hoffman*, 207 Neb. 166, 170, 296 N.W.2d 707, 710 (1980). Accord *Rogers v. Petsch*, 174 Neb. 313, 117 N.W.2d 771 (1962).

### "Runoff" Defined

We do not find the term "runoff" to be so easily defined as the trial court determined. An exhaustive but unsuccessful search of case law in Nebraska and other jurisdictions was made for a definition of runoff, as the insurance policy itself does not provide one. Several Nebraska cases use the term "runoff" without specifically defining it. In these cases, runoff is used in discussions involving the runoff of surface or irrigation waters through natural drainage. See, *Eunice Harrington Investments, Ltd. v. Wallace*, 207 Neb. 373, 299 N.W.2d 174 (1980); *Brummund v. Vogel*, 184 Neb. 415, 168 N.W.2d 24 (1969); *Wiese v. Klassen*, 177 Neb. 496, 129 N.W.2d 527 (1964); *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962); *Schmutte v. State*, 147 Neb. 193, 22 N.W.2d 691 (1946). These cases tend to import that runoff water is water which flows naturally over the surface of the ground rather than under it and that runoff is just another word for "diffused surface water." However, we can find no Nebraska case which

gives a specific definition of runoff.

██ In the glossary in 6 Waters and Water Rights at 542 (Robert E. Beck 1991), runoff is defined as that "portion of precipitation that would ultimately reach a stream without human intervention." In 14 The Oxford English Dictionary 279 (2d ed. 1989), "run-off" is defined as

> **1. a.** [t]he amount of water that is carried off an area by streams and rivers after having fallen as precipitation; the water itself; also, water that runs straight off the ground without first soaking into it.
> . . . .
> **b.** The process or fact of water, or what the water contains, running off from an area; an instance of this; (*N. Amer.*) the period when such a process occurs, esp. the spring thaw.

The Oxford English Dictionary cites and quotes various writings as authority for the definitions it gives, and each of these several quotes uses runoff in such a way as to connote water from rain or snow running over land.

There is, of course, no doubt that the rainwater and snowmelt that flowed off the roof of the structure on the adjoining property was runoff to begin with. There is no doubt that at some point such water ceased to be runoff. The definitions of the term "runoff" do not touch upon the question of when water ceases to be runoff.

██ Based upon our review of the available law and technical definitions, we find that runoff is merely another term for surface water.

CHANGE OF CHARACTER OF SURFACE WATER OR RUNOFF

The question then arises that if surface water and runoff water are diverted or channeled by an artificial force or manmade device, thereby altering it from its natural course of flow, does the water then cease to be surface water or runoff water? No Nebraska case can be found which addresses this specific question, although other jurisdictions have dealt with the issue.

Georgetowne cites *Ferndale Dev. v. Great Am. Ins. Co.*, 34 Colo. App. 258, 527 P.2d 939 (1974), wherein a water main

broke, resulting in water damage to an insured's property. While *Ferndale Dev.* involves the channeling of water through an artificial device, we find this case and other cases to which Georgetowne cites inapplicable because the water in *Ferndale Dev.* and the other cases originated from controlled bodies of water rather than from surface water or runoff water, e.g., from rain or melted snowfall.

Particularly relevant and factually similar to the case at bar is *Heller v. Fire Ins. Exchange*, 800 P.2d 1006 (Colo. 1990), upon which Georgetowne principally relies. In *Heller*, the insureds claimed damages pursuant to their policy after discovering that spring snowmelt had caused extensive water damage to their home. The spring runoff, which in previous years had caused no damage, had been diverted from its natural flow and channeled through manmade trenches on neighboring property. The insurance company denied coverage on the basis of a "water damage" exclusion provision, which defined water damage as " 'flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether driven by wind or not.' " *Id.* at 1007-08. After their claim for damages was denied, the insureds brought suit against the insurance company. A jury entered a verdict for the insureds. The Colorado Court of Appeals reversed, ruling that because the spring runoff was "surface water," it was excluded from coverage, regardless of the fact that the water was diverted to the insureds' property by the negligent or intentional acts of a third party.

The Colorado Supreme Court reversed the court of appeals and reinstated the jury verdict. In so doing, the court held the following:

> Here, the water originated from natural runoff of melted snow, but was diverted into man-made trenches that were fifteen to twenty feet long and six inches deep. The trenches diverted the regular path of the melted snow over a natural ridge. These trenches were "defined channels" that diverted the regular flow of the water, preventing "percolation, evaporation, or natural drainage." In examining the characteristics of the water that damaged the Hellers' property, we conclude that the

runoff lost its character as surface water when it was diverted by the trenches and therefore was not within the surface water exclusion contained in the Hellers' policy. *Id.* at 1009.

The Texas Court of Civil Appeals has also determined when water ceases to be characterized as surface water. In *Transamerica Insurance Company v. Raffkind*, 521 S.W.2d 935 (Tex. Civ. App. 1975), homeowners suffered damage to the interior of their house and to their furnishings when surface water seeped into the ground and entered subsurface air conditioning and heating ducts. As a result, the former surface water circulated as vapor into the home. The appeals court affirmed the trial court's judgment for the homeowners and held that the definition of "surface water" under the flood exclusion in the homeowners policy meant natural precipitation which fell on and passed over the ground's surface until it either evaporated, was absorbed by the ground, or reached channels in which water naturally flows.

We state the obvious when we observe that the water in this case was not "surface" water because it was carried by a drainage pipe 4 feet beneath the ground's surface. We also observe that the likelihood is obvious that the damage sustained by Georgetowne's retaining wall would more readily occur from water diverted through an underground drainage pipe measuring 80 to 100 feet in length, as opposed to the rain or snowmelt flowing in its natural course or diffused state. See *Thorell v. Union Ins. Co.*, 242 Neb. 57, 492 N.W.2d 879 (1992). Exclusion k does not apply to Georgetowne's claim for damages, because the water causing the damage ceased to exist as surface water or runoff once it was channeled through the pipe. See *Heller, supra.* Fidelity asserts that there is no distinction under the terms of the policy between artificial and natural causes of flooding and that none should be drawn on this appeal. However, based on the above-cited case law construing the term "surface water" as water diffusing naturally over the ground, as well as our holding that, by definition, runoff is the same as surface water, we find as a matter of law that the terms as used in the policy are restricted to surface waters and runoff waters which flow naturally. We

therefore reverse the order of the trial court dismissing Georgetowne's petition and remand the cause with directions to enter judgment for Georgetowne for the stipulated damages, along with attorney fees incurred in that court. We also award Georgetowne $3,200 for the services of its attorney in this court.

REVERSED AND REMANDED WITH DIRECTIONS.